UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE L. ANDERSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>Defendants. | Case No. 22-cv-01577-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Plaintiffs bring claims against the County of Alameda and Sheriff Gregory Ahern related to the death of Lee Esther Anderson; Plaintiffs are Ms. Anderson's daughter N.C., father Willie L. Anderson, and estate, respectively. (Dkt. No. 1 ¶¶ 4–6.)[1] Before the Court is Defendants' motion to dismiss. (Dkt. No. 14.) Having carefully considered the parties' briefing, and having had the benefit of oral argument on June 30, 2022, the Court DENIES the motion as explained below.

**COMPLAINT ALLEGATIONS**

Ms. Anderson, an African American woman, was incarcerated at Santa Rita Jail after being convicted of a minor offense. She was set to be released in April 2022. The Jail is located in Dublin, California and operated by the Alameda County Sheriff's Office. The Jail has chronically unsafe conditions that endanger the people incarcerated there. Since 2014, 56 people have died while incarcerated at the Jail, the majority of whom were people of color. Ten deaths resulted from obtaining drugs within the Jail. Deaths at the Jail are 50% more common than in the largest jail system in the country, Los Angeles County Jail.

On April 23, 2021, Kameron Reid smuggled drugs into the Jail as she was being booked.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

On May 16, 2021, Ms. Anderson was found unresponsive. Jail medics administered Narcan and CPR, during which red fluid came out of Ms. Anderson's nose and mouth. The fire department and an ambulance arrived at 1:05 p.m. and pronounced Ms. Anderson dead shortly thereafter. An autopsy concluded that Ms. Anderson had died of cardiopulmonary arrest complicated by underlying heart disease and fentanyl use. Plaintiffs allege Ms. Anderson had never ingested fentanyl before the day of her death and would not have done so knowingly. Defendants' inadequate drug screening, detection, and search policy failed to detect Ms. Reid's smuggled drugs and led to Ms. Anderson's death.

Plaintiffs bring claims under 42 U.S.C. § 1983 for violations of their Fourteenth Amendment due process and equal protection rights; under Section 1983 for violations of their Eighth Amendment rights; under Section 1983 for unconstitutional custom or policy and failure to train; for violations of the California Bane Act; and for wrongful death—negligence. (Dkt. No. 1 ¶¶ 33–89.)

## DISCUSSION

Defendants move to dismiss all of Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have agreed to voluntarily dismiss without prejudice their Fourteenth Amendment equal protection claim (as against both Defendants) and their state law claims as against the County only. (Dkt. No. 20 at 6, 9 n.1.)

### I.     Fourteenth Amendment Due Process Claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs N.C. and Mr. Anderson allege their due process rights were violated by unwarranted state interference in their familial relationships with Ms. Anderson. Defendants' assertion that only an Eighth Amendment claim is available because Ms. Anderson was incarcerated after a conviction is incorrect; Plaintiffs bring their own claims under the Fourteenth Amendment, (Dkt. No. 1 ¶¶ 35–36). *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) ("A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment."). Defendants offer no other argument why Plaintiffs fail to state a claim for

violation of due process under the Fourteenth Amendment.

Accordingly, Defendants' motion is DENIED as to Plaintiffs' first claim.

## II.     *Monell* Claims

"[M]unicipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021); *see Monell v. Dep't of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658 (1978). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez*, 993 F.3d at 1153 (cleaned up). Plaintiffs bring claims for unconstitutional custom or policy and failure to train. (Dkt. No. 1 ¶¶ 57–75.)

### A.     Custom or Policy

"A policy can be one of action or inaction." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." *Id.* at 1186. Defendants challenge the latter two elements. (Dkt. No. 14 at 10–14.)

Plaintiffs have set forth specific factual allegations that plausibly entitle them to relief on a claim of unconstitutional custom or policy. They allege that the Jail lacks the drug screening, detection, and search policy necessary to ensure the safety of people incarcerated there. Whether framed as a policy of inaction or inadequate action, the allegations plausibly support an inference of deliberate indifference. *See Long*, 442 F.3d at 1189–90 ("This court consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place."). The allegation that, since 2014, ten people have died from obtaining drugs within the Jail plausibly supports an inference that the County "was on actual or constructive notice that its omission would likely

3

result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (cleaned up). Finally, the allegations that a person smuggled drugs into the Jail without detection and that Ms. Anderson died after ingesting fentanyl that she could only have obtained within the Jail plausibly support an inference that the policy was the moving force "in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* at 1143.

Accordingly, Defendants' motion is DENIED as to Plaintiffs' fourth claim.

### B. Failure to Train

"Failure to train may amount to a policy of deliberate indifference, if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (cleaned up). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez*, 993 F.3d at 1153–54. Defendants again challenge the latter two elements.

For similar reasons as the other *Monell* claim, Plaintiffs have set forth specific factual allegations that plausibly entitle them to relief on a claim of failure to train. They allege that Defendants failed to train, or failed to adequately train, Jail staff to search for drugs and prevent drugs from entering the Jail. (Dkt. No. 1 ¶¶ 27, 40, 48, 58, 64, 69–73.) Such failure plausibly rises to the level of deliberate indifference because Plaintiffs allege Defendants knew that drugs routinely entered the Jail and that ten people had died from obtaining drugs within the Jail. Finally, the allegations plausibly support an inference that Ms. Anderson would not have died had Jail staff been adequately trained to prevent drugs from entering. The allegation that a person smuggled drugs into the Jail without detection, coupled with the number of drug-related inmate deaths, supports an inference that Defendants failed to train their staff.

Accordingly, Defendants' motion is DENIED as to Plaintiffs' fifth claim.

### III. Sheriff Ahern's Supervisory Liability

Plaintiffs name Sheriff Ahern, in his individual capacity, as Defendant with respect to all

4

1  their claims. (*See* Dkt. No. 1 ¶ 9.) Defendants challenge all the claims as insufficiently pleaded
2  against Sheriff Ahern.

### A. Section 1983 Claims

"We have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (cleaned up). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (cleaned up).

Plaintiffs have set forth specific factual allegations that plausibly entitle them to relief against Sheriff Ahern for deprivations of their Fourteenth Amendment due process and Eighth Amendment rights. They allege that Sheriff Ahern was responsible for supervising all aspects of the Jail, was aware that drugs were routinely smuggled into the Jail, was aware that people died from obtaining drugs within the Jail, and failed to implement an adequate drug screening policy. (Dkt. No. 1 ¶¶ 12, 26–28, 40, 47, 49, 61–63, 71–73.) These allegations permit a plausible inference that Sheriff Ahern, "through [his] own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Starr*, 652 F.3d at 1208 ("[T]he plaintiff alleged that the facility in which he was confined was overcrowded; that the Sheriff knew the facility was not a proper place to detain him and posed a risk of harm but had placed him there anyway; and that the Sheriff was ultimately in charge of the facility's operations. . . . [A] reasonable jury could have found that the Sheriff was deliberately indifferent to the plaintiff's safety." (cleaned up)).

Accordingly, Defendants' motion is DENIED as to Plaintiffs' first, second, fourth, and fifth claims as against Sheriff Ahern.

### B. State Law Claims

Defendants do not meaningfully dispute that supervisory liability may attach for violations

5

of the California Bane Act and for wrongful death—negligence. (*See* Dkt. No. 14 at 16; Dkt. No. 22 at 4–5.) Defendants' argument that Plaintiffs must allege Sheriff Ahern directed someone to affirmatively allow drugs to enter the Jail, or that he was personally involved in the entry of the drugs that Ms. Anderson later ingested, is not supported by any precedent. Plaintiffs allege that Sheriff Ahern was personally involved in supervising the Jail, deciding whether to create policies, and creating policies. *See Mitchell v. City of Rohnert Park*, No. C 09-03076 WHA, 2010 WL 583948, at *3 (N.D. Cal. Feb. 16, 2010) ("Under California law, the chief of a municipal police department is not responsible for the acts of members of the force, unless he directed such acts to be done, or personally cooperated in the offense.").

Accordingly, Defendants' motion is DENIED as to Plaintiffs' sixth and seventh claims as against Sheriff Ahern.

## CONCLUSION

Defendants' motion is DENIED. As discussed at oral argument, Plaintiffs shall file an amended complaint on or before August 1, 2022 that adds pertinent factual allegations to their existing claims and removes their voluntarily dismissed claims. The Court will hold an initial case management conference on August 11, 2022 at 1:30 p.m. by Zoom video. A joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 14.

**IT IS SO ORDERED.**

Dated: June 30, 2022

JACQUELINE SCOTT CORLEY
United States District Judge